UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**SONDRA GUIDRY**   CASE NO. 2:22-CV-05439

**VERSUS**   JUDGE JAMES D. CAIN, JR.

**LIBERTY MUTUAL INSURANCE**   MAGISTRATE JUDGE KAY

### MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 33] filed by defendants Liberty Mutual Insurance Company and Liberty Personal Insurance Company, seeking dismissal of plaintiff's claims on the grounds that she has voided her insurance policy through material misrepresentations. The motion is regarded as unopposed.

### I.
### BACKGROUND

This suit arises from damage allegedly inflicted to plaintiff's residence at 1006 N. Goos Boulevard, Lake Charles, Louisiana, in Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020. At all relevant times the property was insured under a homeowner's policy issued by Liberty Personal Insurance Company, which provided coverage limits of $89,155.20 for the dwelling, $8,915.52 for other structures, $62,408.00 for personal property, and $17,831.04 for loss of use with a named storm deductible of $8,880. Doc. 33, att. 4. The policy also provides the following condition:

    2. Concealment or Fraud
        a. Under Section I – Property Coverages,
        . . . .

>> (2) With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy, we provide no coverage for loss under Section I – Property Coverages if, whether before or after a loss, one or more of the "insureds" have:
>> > (a) Intentionally concealed or misrepresented any material fact or circumstance;
>> > (b) Engaged in fraudulent conduct; or
>> > (c) Made false statements;
>> relating to this insurance.
>> . . . .
>> c. However, if the conduct specified under a. or b. above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

*Id.* at 48.

Plaintiff applied for insurance with Liberty on May 5, 2020. Doc. 33, att. 9, pp. 119–21. On the form she stated that the property was not under construction or undergoing "significant renovation or remodeling," that the roof was in good condition, and that the property was "generally occupied during the day." *Id.* Based on this application Liberty issued a policy effective for twelve months beginning on April 29, 2020, with plaintiff as the named insured. *See* doc. 33, att. 4. Photographs later provided to Liberty from a non-party source showed that, as of April 20, 2020, the property was under construction and undergoing significant remodeling. Doc. 33, att. 10, pp. 101–13. These photographs cast significant doubt on plaintiff's claim that the property was occupied during the day. Plaintiff also subsequently produced an estimate from April 17, 2020, for extensive work to the property, including major roof repairs and interior remodeling. *Id.* at 114–36. There is no evidence that this work was completed in any significant measure by the time plaintiff completed her insurance application. Utility bills show the following monthly water usage:

0 gallons for April 2020, 1 gallon for May 2020, 0 gallons for June 2020, 0 gallons for July 2020, 0 gallons for August 2020. Doc. 33, att. 11. Electricity bills show the following monthly energy usage: <15 kWh for April 2020; <150 kWh for May 2020; <190 kWh for June 2020; <230 kWh for July 2020; and 30 kWh for August 2020. *Id.*

Plaintiff first filed a Hurricane Laura claim on August 26, 2020, requesting coverage for her evacuation expenses. Doc. 33, att. 3, ¶ 5. On September 2, 2020, she emailed Liberty select photographs of the interior of the home, including a closeup of a hole in the ceiling, wet cardboard on the floor next to a window, and a spare door leaning against a window. Doc. 33, att. 10, pp. 98–100. Liberty inspected the exterior of the property on September 10, 2020, but did not inspect the interior due to concerns with COVID-19 and instead engaged Paul Davis Restoration to perform interior estimates and mitigation. Doc. 33, att. 3, ¶ 6. Liberty asserts that Paul Davis Restoration contacted plaintiff on multiple occasions to schedule an inspection but plaintiff did not respond. Instead, plaintiff emailed Liberty on October 3, 2020, to state that interior demolition was already complete. *Id.* at ¶ 7; doc. 33, att. 5. In response Liberty requested invoices for this work. Doc. 33, att. 5.

Plaintiff did not respond and Liberty inspected the interior of the property on October 22, 2020. Doc. 22, att. 3, ¶ 8. The inspection showed that the interior of the house had been completely gutted. *Id.* Liberty again requested invoices for the work performed. *Id.* On December 28, 2020, plaintiff called Liberty to request a reinspection and the opportunity to show her bids in person. *Id.* at ¶ 9. A Liberty adjuster met plaintiff at the property on January 4, 2021, but she did not provide any invoices or estimates. *Id.* at ¶ 10. Nearly seven months later, on July 25, 2021, plaintiff emailed Liberty numerous

handwritten invoices for demolition, tarping, and pack-out dated between September and October 2020. Doc. 33, att. 10, pp. 44–54. The invoices were allegedly written by three different contractors but are all in the same handwriting and reflect that plaintiff paid in cash. *Id.* Based on these submissions Liberty revised its estimate to $83,543.38 (RCV)/$67,756.36 (ACV) in damages to the dwelling and issued a supplemental payment. Doc. 33, att. 3, ¶ 11.

On August 21, 2021, plaintiff submitted a rebuild estimate from "Hardy Construction" totaling $124,244.62. *Id.* at ¶ 12. Based on this estimate Liberty revised the dwelling estimate to $89,519.41 (RCV)/$73,733.39 (ACV), above the policy limit of $89,155.20, and issued a supplemental payment on August 31, 2021. *Id.* Plaintiff has not provided any invoices showing that repairs are complete. *Id.* at ¶ 13. Plaintiff later admitted under oath that the property was undergoing significant renovations at the time Hurricane Laura struck and that she withheld these details from Liberty during the adjustment of her claim. Doc. 33, att. 9, pp. 347, 359.

On August 20, 2021, plaintiff submitted a 17-page handwritten contents list with no supporting documentation. *Id.* at ¶ 14; doc. 33, att. 6. The list included several high-value items, including designer shoes, multiple large televisions, Apple electronics, complete bedroom sets for multiple bedrooms, formal living room and dining room furniture, over $10,000 in wall hangings, area rugs, and drapes; over $12,000 in women's clothing; $1,500 in haircare items; and $6,000 in designer luggage. *Id.* In response Liberty requested documentation that the items were damaged. Doc. 33, att. 7.

Between August 2021 and May 2022 plaintiff repeatedly contacted Liberty about the status of her contents claim. Doc. 33, ¶¶ 14–15. Liberty responded that she had not provided documentation that she ever owned or possessed the items, that they were in the insured property at the time of loss, or that they were actually damaged. *Id.* at ¶ 16. On May 9, 2022, plaintiff provided photographs of allegedly damaged contents including piles of clothing, a few items of furniture, and some Louis Vuitton items and screenshots showing prices. Doc. 33, att. 8. Liberty noted that the photographs showed the items at various addresses, rather than just at the insured property. Doc. 33, att. 3, ¶ 18. Because of the suspicious circumstances, Liberty assigned the matter to its Special Investigations Unit ("SIU"). *Id.* SIU learned that plaintiff owned a residential property at a different address in Iowa, Louisiana, that was insured by State Farm, and that she had submitted a Hurricane Laura claim to State Farm for that property. *Id.* From State Farm SIU learned that plaintiff had submitted the same contents photographs that she had sent to Liberty for her contents claim, and had been paid policy limits of $201,074 on her contents claim by State Farm. *Id.* at ¶ 19.

Based on these findings Liberty retained counsel to conduct an Examination Under Oath ("EUO") of plaintiff. Prior to the EUO being scheduled, plaintiff filed suit raising claims of breach of insurance contract and bad faith against Liberty. Doc. 1. Liberty now seeks summary judgment on her claims, alleging that she has voided the policy through her material misrepresentations. Doc. 33. Plaintiff was formerly represented by counsel but that counsel withdrew. Plaintiff was then granted multiple extensions to find counsel and

then to file her *pro se* response. The last deadline has passed and the court has received no response; the motion is thus regarded as unopposed.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046). Additionally, an insurer may avoid coverage on grounds of material misrepresentation only where the statements were made with intent to deceive. *Chavez v. Homesite Ins. Co.*, 834 F.Supp.2d 504, 507 (E.D. La. 2011) (citing *Cousin v. Page,* 372 So.2d 1231, 1233 (La. 1979)). Because there will rarely be direct evidence of intent, this element "must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations . . . and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Id.* at 508.

The undisputed evidence shows that plaintiff misrepresented the status of the house at the time she applied for insurance. Based on the energy consumption at the property, it was not generally occupied during the daytime. The extensive repairs documented through the contractor's invoice and the photographs taken shortly before she completed the application also contradict her representations as to the house's condition. Plaintiff can make no plausible claim of ignorance as to the meaning of the questions, and the only purpose to such extensive falsifications would be to obtain insurance coverage for the house that might not otherwise be offered. Accordingly, her coverage should be voided for this material misrepresentation. As for plaintiff's Laura claim, her submission of identical photographs for contents claimed at two residences is sufficient to show her egregiously dishonest conduct. As Liberty notes, she also failed to prove pre-storm ownership of many of the items initially claimed. Plaintiff's post-storm material misrepresentations provide additional grounds for voiding her coverage. Accordingly, she can have no claim for breach of contract or bad faith against Liberty.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 33] will be **GRANTED** and all claims in this matter will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 8th day of January, 2024.

*[Signature]*
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE